[Cite as *State v. Moore*, 2012-Ohio-5891.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98178**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# RICARDO MOORE

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-553938

**BEFORE:** Jones, J., Boyle, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** December 13, 2012

**ATTORNEY FOR APPELLANT**

Richard A. Neff
614 W. Superior Avenue
The Rockefeller Building
Suite 1300
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Scott Zarzycki
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant Ricardo Moore appeals his conviction for kidnapping and gross sexual imposition. We affirm.

I. Procedural History and Facts

{¶2} In September 2011, Moore was charged with one count of kidnapping, one count of rape, and two counts of gross sexual imposition. In February 2012, Moore waived his right to a jury trial, and the case proceeded to a bench trial.

{¶3} The trial testimony established the following facts. On August 17, 2011, Rosa Calvo, who resided with her fiancé Jonathan Wilbraham, was awakened at approximately 2:00 a.m. by a woman screaming "no, stop, help." Calvo looked out of her window and saw the victim and Moore struggling. According to Calvo, both the victim and Moore were on their knees and the victim was trying to get away as Moore pulled on her pants. Calvo testified that she then saw Moore pull the victim's pants down and "tear" off her underwear. According to Calvo, it then appeared that Moore got on top of the victim and held her down. The victim continued screaming "stop, get off of me, no, help."

{¶4} Wilbraham also witnessed part of the incident and testified that the victim screaming "help, get away from me" woke him up too. Upon looking out of a window, Wilbraham saw Moore leaning over the victim as she lay on the ground. Wilbraham called the police, and as he was explaining the incident to the dispatcher, a police officer arrived on the scene.

{¶5} The officer, Ismael Quintana, testified that he was doing routine patrol of the area when he heard a woman screaming. He then saw the victim on the ground and Moore on top of her. As the officer approached, he saw the victim trying to fight off Moore, and saw that her shorts were down to her knees, her genitals were exposed, and she was lying on her back. The officer pulled Moore off of the victim.

{¶6} The victim reported to Officer Quintana that Moore assaulted her, pulled her pants down, and tried to digitally penetrate her anus.

{¶7} After being advised of his *Miranda* rights, Moore reported to the officer that he and the victim had been together that evening smoking his crack cocaine and he thought the victim owed him a sexual favor in return.

{¶8} The victim testified and admitted to doing drugs with Moore that evening. At the end of the evening, Moore and another male were giving her a ride home; Moore was in the front passenger seat, the other male was driving, and the victim was in the backseat. The victim testified that during the ride, Moore would repeatedly reach back to "grab and touch" her thighs and breasts. The victim noticed that the driver had passed the area where her home was. When the driver slowed down, the victim opened her door to exit; Moore grabbed her arm, but she managed to escape.

{¶9} The victim started walking down the street, and soon saw that Moore was following her on foot. Moore eventually caught up to her, and told her that she was not going anywhere because she "owed" him. Moore then grabbed the victim's arm, but she was able to free herself and continue walking. Moore caught up with the victim again

and he knocked her down. The victim testified that she was on the ground struggling with him as he was ripping her clothes off. The victim further testified that during the struggle, Moore sexually assaulted her.

**{¶10}** Police photographs of the victim, which were admitted into evidence, showed bruises, scratches, and swelling on her arms and legs.

**{¶11}** On this testimony and evidence, the court found Moore guilty of kidnapping and one of the gross sexual imposition counts. He was sentenced to a five-year prison term. His sole assignment of error reads as follows: "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against both the sufficiency of the evidence and the manifest weight of the evidence."

## II. Law and Analysis

**{¶12}** In his assignment of error, Moore contends that his convictions are not supported by sufficient evidence and are also against the manifest weight of the evidence. Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Cleveland v. Roche*, 8th Dist. No. 96801, 2012-Ohio-806, ¶ 8, citing *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, and *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. "Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Roche* at *id.* We, therefore, examine whether Moore's convictions are

supported by the manifest weight of the evidence.

{¶13} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶14} Moore contends that the trial court lost its way by giving too much weight to the victim's testimony. According to Moore, the victim was not credible because of her drug habit and some other mental health issues. We disagree.

{¶15} In addressing a manifest weight of the evidence argument, as previously mentioned, we are able to consider the credibility of the witnesses. *Roche* at ¶ 10. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80,

461 N.E.2d 1273 (1984). Accordingly, we afford great deference to the trier of fact's determination of witness credibility. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶16} The victim's testimony was, at least in part, corroborated by the state's other witnesses. Both Calvo and Wilbraham testified that they were awakened in the early morning hours by the victim's screams for "help" and plea for Moore to "stop." Calvo testified that she saw the victim struggling to get away from Moore, as Moore pulled her pants down and tore her underwear off.

{¶17} Moreover, the arresting officer was on routine patrol when he heard a woman screaming. He saw the victim on the ground and Moore on top of her. As the officer approached, he saw the victim trying to fight off Moore, and saw that her shorts were down to her knees, her genitals were exposed, and she was lying on her back. The officer had to pull Moore off of the victim. After being advised of his *Miranda* rights, Moore reported to the officer that he and the victim had been together that evening smoking his crack cocaine and he thought the victim owed him a sexual favor in return.

{¶18} Photographs of the victim admitted into evidence showed bruises, scratches, and swelling on her arms and legs.

{¶19} Count 1 of the indictment charged that Moore "did, by force, threat, or deception, purposely remove [the victim] from the place where she was found or restrain the liberty of her for the purpose of engaging in sexual activity * * *." Count 3 of the indictment charged that Moore "did have sexual contact with [the victim], to wit:

touching the anal area of [the victim], not his spouse, by purposely compelling [her] to submit by force or threat of force."

{¶20} The manifest weight of the evidence supports the trial court's finding of guilt on the two charges. As such, the evidence was also necessarily sufficient to support the convictions. Moore's assignment of error is therefore overruled.

{¶21} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR