[Cite as *State v. Soto*, 2016-Ohio-7476.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 103321

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JUAN SOTO

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588583-B

**BEFORE:** Laster Mays, J., Kilbane, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** October 27, 2016

**ATTORNEY FOR APPELLANT**

Brian A. Murray
Zukerman, Daiker & Lear Co., L.P.A.
3912 Prospect Avenue, East
Cleveland, Ohio 44115


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Jeffrey Schnatter
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1}   Defendant-appellant Juan Soto ("Soto") appeals his conviction for rape in violation of R.C. 2907.02(A)(1)(a), a felony of the first degree.   Soto was sentenced to five years in prison and declared to be a Tier III sex offender.   After a thorough review of the record, we affirm.

## I.   BACKGROUND AND FACTS

{¶2}   Soto and codefendant Emmanuel Machuca ("Machuca") were indicted on a total of 14 counts relating to the kidnapping and sexual assault of then 23-year-old M.R. in July 2014. The trial court severed Machuca's indictments for an unrelated 2010 rape case.

{¶3}   Soto was indicted for the following:[1]

Count 8, rape, R.C. 2907.02(A)(2);
Count 9, rape, R.C. 2907.02(A)(1)(a);
Count 10, rape, R.C. 2907.02(A)(2);
Count 11, rape, R.C. 2907.02(A)(1)(a);
Count 12, rape, R.C. 2907.02(A)(2);
Count 13, rape, R.C. 2907.02(A)(1)(a); and
Count 14, kidnapping, R.C. 2905.01(A)(4), with a sexual motivation

specification, R.C. 2941.147(A).

Machuca was indicted for the identical charges under Counts 1 through 7.

---

[1]   The cited list reflects the trial court's renumbering of the counts for purposes of trial, as the result of the severance of Machuca's 2010 charges.

**{¶4}** Soto and Machuca pled not guilty to the charges. A jury trial ensued in May 2015.

## A.    Trial

### 1.    Testimony of Identified Victim M.R.

**{¶5}** Identified victim M.R. testified with the aid of a Spanish language interpreter. M.R. attended mainstream and special assistance education classes throughout her high school years. She resides with her mother ("T.C."), and her stepfather, and enjoys attending parties and hanging out with friends. M.R. drinks a beer or cocktail occasionally, but "nothing extreme."

**{¶6}** On July 12, 2014, M.R. drove to the home of her girlfriend and former high school classmate, N.A., so they could meet friends at a local bar, watch a televised boxing match, and celebrate N.A.'s recently discovered pregnancy. N.A. was surprised to see an open half-empty bottle of a Baccardi rum cocktail drink on the front seat of M.R.'s car. M.R. told N.A. that it was the first time that she had consumed the drink and that she liked it. M.R.'s car overheated. N.A. was not feeling well and decided not to go out. At M.R.'s request, N.A. drove M.R. to the bar about 10:00 p.m. and M.R. told N.A. that she would have a friend at the bar give her a ride back to N.A.'s house to pick up the car.

**{¶7}** M.R. recognized several former high school classmates at the bar, including Machuca, who played high school basketball, and Soto. M.R. knew their names, but testified that Soto introduced himself as Jose. M.R. consumed one beer during her two to three hours at the bar.

{¶8}    Unable to locate the friend who had agreed to give her a ride, M.R. began talking with Soto, Machuca, and an unknown male about 1:30 a.m.  While they were talking, M.R. consumed one-half of a beer that Soto purchased for her, and entered her phone number into Soto's cell phone.  M.R. decided to accompany the three males to a party that other former classmates were attending.

{¶9}    Between 2:00 and 2:30 a.m., Machuca drove M.R., Soto, and the unknown male to a gas station convenience store and next to the home of a paraplegic male known as El Negrito.  M.R. recognized El Negrito and was speaking with him when Machuca called her into a bedroom.  From the bedroom, M.R. could see Soto pouring a drink from a bottle in another room, but could not see the bottle label.

{¶10}   Soto entered the bedroom with a clear glass, about 5 inches tall, half-filled with a transparent liquid.  Soto announced that the drink was a double because it was for M.R.  She drank the contents all at once, though it burned her throat and she was not familiar with the taste.

{¶11}   M.R. began feeling strange, and said she could not think clearly.  Soto poured white powder on a little table, and inhaled it.  Soto then placed his hand on the back of M.R.'s head and told her to inhale the powder.  After M.R. inhaled the powder, Soto placed white powder into her nostril with his finger.

{¶12}   M.R. began feeling "really bad" and hearing "screeching sounds" in her ears.  She stated she then became concerned that she may be in danger.  Approximately 15 to 20 minutes after arriving at the first house, M.R. left with Soto, who drove her to

another house.   M.R. testified initially that she thought they were going to the after party they discussed attending while at the bar. M.R.   later testified that, though nothing was said to induce her to leave the first house, she did not feel that she had a choice.

**{¶13}**   M.R. and Soto arrived at the second house where Machuca and the unknown male were also present.   M.R. was groggy and believed that she may have gone "in and out of consciousness."   M.R. was not sure what occurred next; however, at one point, she recalled sitting up while Soto had his penis in her mouth, and another time, Machuca was raping her vaginally and slapping her. M.R. also remembered Machuca and Soto exchanging positions, and violating her vaginally and anally.

**{¶14}**  M.R. was not sure about the order of events, but was certain that  they occurred.   M.R.'s response to whether she had given consent to the sexual activity was, "[a]s far as I remember, no."   She also recalled telling both of them to stop, "like three times."

**{¶15}**   The unknown male opened the door and spoke to Soto, who told   M.R. to wash up in the bathroom because Machuca's girlfriend was coming over.   Soto and Machuca then dropped M.R. off at N.A.'s house.   M.R. did not recall drinking anything or taking any drugs at the second house.

**{¶16}**  M.R.'s cell battery was dead when she arrived at N.A.'s house.   She called for her outside of N.A.'s window.   N.A. emerged and M.R. fell down crying and told her what happened.   N.A. called T.C. over M.R.'s objections, and took M.R. home.

**{¶17}**   M.R. stated she was confused and crying when speaking with the police

in the ambulance at her mother's house. She was examined at the hospital and her clothing retained for evidence. M.R. later provided a statement to Cleveland police detective, Liz Galarza ("Detective Galarza"), and identified photographs of Soto and Machuca.

{¶18} During cross-examination, M.R. explained that any conflicts between her statements to the hospital nurse, Detective Galarza, and to police during the ambulance ride occurred because "some memories come back, some things I remember, they come and go." However, she added that, "as time has gone on, and passed, I remember better details and things."

### 2. N.A.

{¶19} N.A. testified that M.R. usually kept to herself, did not drink or take drugs, and was always with T.C. during their high school years. N.A. was surprised to see M.R. with an open bottled rum drink in the car the evening of the incident. N.A. confirmed dropping M.R. off at the sports bar.

{¶20} At approximately 5:00 a.m., M.R. appeared outside of N.A.'s home, crying loudly that she had been raped. M.R. appeared to be intoxicated and had to be helped to her feet. The commotion awakened the neighbors. N.A. telephoned T.C. who told N.A. to bring M.R. home. M.R. did not want to go.

{¶21} Upon arrival, T.C. angrily grabbed M.R. by her hair, and began hitting M.R., saying "nothing happened to her, she is just drunk." Inside the home, M.R. continued to cry while T.C. continued to hit, push, and punch her. N.A. placed M.R. in a

cold shower to keep her awake until the ambulance arrived. N.A. miscarried the next day, and the friendship between N.A. and M.R. has not been the same since the incident.

### 3. T.C.

{¶22} T.C. testified that M.R. experienced delayed motor skills and mental development at birth, and attended special education classes from the age of three. M.R. was required to account for her time when going out, including activating her cell phone global positioning system ("GPS") monitor, and texting or calling T.C. when changing locations.

{¶23} T.C. was not aware that M.R. was not with N.A. M.R. did not respond to T.C.'s texts or calls and was not home by the 3:00 a.m. curfew deadline. M.R. knew that there would be consequences for breaking the rules. T.C. encouraged M.R. to refrain from alcohol consumption because M.R. is on several medicines that could cause adverse reactions.

{¶24} N.A. brought M.R. home at 5:00 a.m., M.R. was screaming, crying, disheveled and somewhat disoriented. M.R. told T.C. that she was sexually assaulted by Jose (Soto) Machuca, and an unknown person. M.R. was emotionally distressed for days afterward. T.C. found photographs of Soto and Machuca on Facebook and gave the names and pictures to Detective Galarza.

### 4. Nurse Examiner

{¶25} Wendy Turk ("Turk), the sexual assault nurse examiner, examined and collected evidence from M.R. at Fairview Hospital the night of the assault. M.R. arrived

at 8:49 a.m.; however, Turk waited three hours to obtain M.R.'s informed consent for the examination, because M.R. appeared to be under the influence of alcohol. Turk obtained blood and urine samples from M.R. at 10:15 a.m. to test for drugs and alcohol.

{¶26} A Spanish language interpreter was summoned because M.R. spoke very little English. M.R. told Turk that she was "drunk," had been raped by three men, and that three men had been giving her drinks at the bar earlier. M.R. identified Soto as "Jose," and could not recall his last name. Soto told M.R. that he would drive her to her friend's house to pick up her car, but instead, took her to his cousin's house, where he drugged her by putting crack cocaine in her nose and giving her marijuana. Soto then drove her to his house "by Lorain Avenue and 85th Street." M.R. was very sleepy when she arrived at Soto's house. The three men were all touching her and raping her orally, vaginally, and anally, and one was slapping her face. M.R. was crying, confused and very distraught during the examination.

{¶27} Photographs taken during the examination depicted abrasions and bruising on M.R.'s neck, breast, knees, and thigh. Turk further observed abrasions and evidence of trauma to the vaginal canal. Oral, vaginal, and anal swab samples were collected; however, a cervical sample was not taken due to M.R.'s expressed discomfort. Scrapings and samples were also taken from M.R.'s nails and hair.

### 5. Toxicology

{¶28} Toxicologist Dr. Harold Schueler ("Schueler") testified that M.R.'s blood sample, taken at 9:00 a.m. indicated a blood-alcohol level of 0.056 grams per deciliter.

Schueler opined that M.R.'s blood level was 0.102 grams per deciliter at the time she was dropped off at the home of N.A. by Machuca and Soto at approximately 5:00 a.m.

**{¶29}** Schueler also detected the presence of cocaine in the urine, and cocaine metabolites in the blood and urine samples. The blood and urine samples were negative for date rape drugs, sedatives, and marijuana.

### 6. Forensics

**{¶30}** Forensic scientist Jeff Oblock ("Oblock"), from the Cuyahoga County Regional Forensic Science Laboratory, testified that Machuca's DNA was detected on the swabs from M.R.'s fingernail scrapings, underpants, vagina, and anus. Soto's DNA was not detected on any of the items from the rape evidence kit, including M.R.'s clothing. Oblock stated that it was "possible" for someone to have sexual relations with an absence of DNA, for example, using a condom. "Whether that means that an assault didn't happen or contact didn't happen, that's not something I would be able to say."

### 7. Detective Galarza

**{¶31}** Detective Galarza talked with T.C., who provided her with Facebook photographs and information on Soto and Machuca. Detective Galarza's investigation included an interview with El Negrito, and photographing the bedroom described by M.R. M.R. told Detective Galarza that she smoked marijuana and consumed cocaine while with Soto and Machuca, but M.R. was not sure where the consumption occurred. M.R. also told Detective Galarza that she may have consumed three beers that evening, and that she had two glasses of rum drinks at the first house. M.R. did not mention that Soto

prepared a drink for her.

{¶32}   M.R. also told the detective that Soto and Machuca did not wear condoms during the assault.   Soto appeared at Detective Galarza's office by appointment, and consented to buccal swabs for DNA testing.   Detective Galarza was informed that there was no DNA match.   Detective Galarza then obtained a search warrant for buccal swabs from Machuca, and the results were positive.

{¶33}   At the close of the evidence, Soto made a motion for judgment of acquittal pursuant to Crim.R. 29.   In response to the bill of particulars, the state responded that the assault took place at a specific address, that was actually the home address of M.R.   Soto argued that, there was "nothing objective at all to either put Juan Soto at the scene of the alleged rape, or that he engaged in any sexual conduct or activity at that location."

{¶34}   Soto further argued that there was no DNA evidence as to Soto whatsoever. Also lacking was evidence supporting kidnapping or forced intoxication. M.R. had testified that:   (1) she was not restrained or forced in any way to accompany Soto at any point during the evening; and (2) she was not misled or forced to drink the glass of liquid, or to consume the white powder.   The trial court denied the motion.

{¶35} The jury found appellant Soto guilty of Count 13, rape by impairment, in violation of R.C. 2907.02(A)(1), a first-degree felony.   Soto had no prior record.   At sentencing, the trial court acknowledged recent receipt of a letter provided by Soto, explaining that he and M.R. initially engaged in consensual sexual activity.   When Soto realized that M.R. was interested in Machuca, Soto left them alone in the room.   Soto

also indicated that there were others present who could possibly corroborate this information.

**{¶36}** Soto was advised by the trial court that he had the opportunity to address the court during trial and proclaim his innocence, but chose not to, in spite of the fact that Soto did not have a criminal record and faced no risk of prior incidents evidence. Defense counsel asked the trial court not to hold Soto responsible for the legal strategy of the defense. The trial court responded that defense counsel had certainly instructed Soto that it was his prerogative not to testify and give his side of the story, and it was Soto's decision not to do so. The trial court placed the correspondence in the record, and deemed the communication to the trial court to be a waiver of Soto's Fifth Amendment rights.

**{¶37}** Soto was sentenced to five years in prison and determined to be a Tier III sex offender with lifetime registration. This appeal ensued.

## II.    ASSIGNMENTS OF ERROR

**{¶38}**    Soto proffers six assignments of error:

I.    The trial court violated appellant's state and federal constitutional rights to due process by providing a jury instruction on complicity when neither the indictment nor the bill of particulars put appellant on notice that he could be held accountable as an aider and abettor for his codefendant's alleged acts of rape.

II.    The trial court committed reversible error when it provided the jury with an erroneous instruction as it relates to a rape charge alleging that appellant substantially impaired the alleged victim's judgment or control and in instructing the jurors on when they could consider a lesser included offense.

III. The trial court committed reversible error when it failed to provide appellant with a jury instruction for the lesser included offense of sexual battery as it relates to Count 13 of the indictment.

IV. The jury's affirmative finding that appellant committed the offense of rape is not supported by evidence sufficient to satisfy the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution.

V. The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Crim.R. 29.

VI. The trial court violated appellant's rights to due process and a fair trial by entering a judgment of conviction against the manifest weight of the evidence.

## III. LAW AND ANALYSIS

### A. Jury Instructions

#### 1. First Assignment of Error

**{¶39}** In the first assignment of error, Soto argues that the trial court erred by allowing a jury instruction on complicity where neither the indictment, nor the bill or particulars, provided notice to Soto that he could be held accountable for the acts of Machuca. We disagree.

**{¶40}** An abuse of discretion standard applies to reviews of jury instructions. *State v. Chinn*, 85 Ohio St.3d 548, 709 N.E.2d 1166 (1999). The abuse of discretion standard implies an attitude on the part of the court that is unreasonable, arbitrary or unconscionable, and connotes more than an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶41}** We addressed a similar argument in *State v. Smith*, 8th Dist. Cuyahoga No. 86690, 2006-Ohio-3156. Smith argued that the trial court erred in instructing a jury on complicity where: (1) the complicity was not charged in the indictment, (2) there was no factual basis for the instruction, and (3) the instruction had the effect of significantly altering the charges. *Id.* at ¶ 62. We held that:

> Pursuant to R.C. 2923.03(F), a charge of complicity may be stated in terms of R.C. 2923.03 or in terms of the principal offense. *State v. Caldwell*, 19 Ohio App.3d 104, 483 N.E.2d 187 (1984). Where one is charged in terms of the principal offense, he or she is on notice, by operation of R.C. 2923.03(F), that evidence could be presented that the defendant was either a principal or an aider and abettor for that offense. *See State v. Dotson,* 35 Ohio App.3d 135, 520 N.E.2d 240 (1987). Because a charge of complicity may be stated in terms of either the principal offense or in terms of R.C. 2923.03, the complicity section, the indictment was not amended when the court instructed the jury that they could find *Johnson* guilty under the complicity theory.

*State v. Smith,* 8th Dist. Cuyahoga No. 86690, 2006-Ohio-3156, ¶ 65, quoting *State v. Johnson,* 8th Dist. Cuyahoga Nos. 81692 and 81963, 2003-Ohio-3241.

**{¶42}** We further observed in *Smith* that the analysis does not stop at this point. The instruction is only proper if the record reflects sufficient evidence to demonstrate complicity pursuant to R.C. 2923.03(A)(3), providing that no person shall "aid or abet another in committing the offense." *Smith* at ¶ 66.

**{¶43}** M.R. testified that Machuca and Soto drove her to the first house and summoned her into the bedroom. Soto handed her a glass of clear liquid that burned M.R.'s throat, and next held the back of her head, telling her to inhale the cocaine. Soto placed cocaine on his finger, inserted it into her nostril and told her to inhale. M.R.

testified that she felt groggy and "not herself." Soto drove M.R. to the second house where M.R. recalled Soto having her perform oral sex, and that Soto and Machuca changed places as she was violated orally, anally, and vaginally.

{¶44} Pivotal here, even if the evidence was insufficient to warrant a complicity instruction, which it is not, Soto was not convicted of complicity. Soto was convicted of the principal offense, engaging in sexual conduct by substantially impairing the other person's judgment or control for the purpose of preventing resistance, by administering a drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception. R.C. 2907.02(A)(1)(a).

{¶45} R.C. 2923.03(F), governing complicity, provides that "[a] charge of complicity may be stated in terms of this statute, *or in terms of the principal offense*." (Emphasis added.) *Id*. Soto's indictment as a principal joint offender with Machuca, for the same charges, placed Soto on notice that he could be found liable for complicity. *State v. Harrington*, 1st Dist. Hamilton Nos. C-0800547 and C-0800548, 2009-Ohio-5576, ¶ 15. Soto's first assignment of error is without merit.

### 2.     Second Assignment of Error

{¶46} The second assignment of error is that the trial court provided an erroneous jury instruction as it relates to a rape charge alleging that Soto substantially impaired M.R.'s judgment or control, and in instructing the jurors on when they could consider a lesser included offense. We find that the trial court's instructions did not rise to the level of plain error.

**{¶47}** Soto offers that the trial court erroneously issued an "acquittal first" instruction, and that the instructions were ambiguous and confusing. The parties concur Soto failed to object to the instruction during trial; therefore, a plain error analysis applies. Crim.R. 30(A) and 52; *State v. Williford*, 49 Ohio St.3d 247, 251, 551 N.E.2d 1279 (1989). Plain error is an obvious defect in the trial proceedings that affects a defendant's substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.

**{¶48}** "An erroneous jury instruction does not amount to plain error unless, but for the error, the result of the trial clearly would have been different." *State v. Dowell*, 8th Dist. Cuyahoga No. 83575, 2004-Ohio-3870, ¶ 31. "An appellate court must view a trial court's jury instructions in the context of the overall charge rather than in isolation." *Id*. at ¶ 32.

**{¶49}** "When a court gives a misleading or conflicting instruction, we are unable to indulge in that presumption and must reverse, even when applying the jury instructions in their entirety analysis." *State v. Mays*, 161 Ohio App.3d 175, 2005-Ohio-2609, 829 N.E.2d 773, ¶ 37 (8th Dist.), quoting *State v. Thompson*, 4th Dist. Ross No. 92CA1906, 1993 Ohio App. LEXIS 5377 at *12-13 (Nov. 9, 1993). Thus, we review the jury instructions as a whole to determine whether the instructions misled the jury, substantially and materially affecting Soto's rights. *Dowell* at ¶ 31-32; *Barnes* at 27.

**{¶50}** The state introduced the subject of sexual battery pursuant to R.C. 2907.03(A)(2) as a lesser included offense under the intoxication rape, and not the force rape charges. The theory was that the jury could easily find that neither Soto or Machuca was responsible for M.R.'s state of intoxication, yet she was intoxicated to a point where she could not consent. The trial court instructed the jury on the lesser included offense of sexual battery for Soto and Machuca on the requested counts.

**{¶51}** The jury instructions for the Soto counts, that began at Count 8, were preceded by a side bar. The court observed that the sexual battery instructions properly provided that a person should not engage in sexual conduct with another not their spouse, when the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired. However, the instructions did not state that the jury had to find that the parties engaged in sexual conduct in order to find the offender guilty of sexual assault. The state agreed.

**{¶52}** The following exchange ensued regarding the instruction:

Defense Counsel: Would you also be able to read, Judge — I know before you give them the lesser included you say it's differentiated from rape by — are you able to find that in your instructions?

Court: Yeah.

Defense Counsel: Did you find that confusing at all or — I want to make sure if we're going to do it again we make sure we get it all right.

Court: It says, the offense of sexual battery is distinguished from rape by the absence or failure to show that he knew the other person's ability to appraise the nature of or

control his or her own conduct was substantially impaired or   significantly weakened.

Prosecutor:          That's actually — you know, it's failure to prove that he induced it. They caused it by force.   They inserted the elements of sexual battery,   next to the failure to prove.

So, [Defense Counsel] is right, that is wrong.

(Tr. 1117-1119.)

{¶53}   The trial court addressed the sexual battery clarification during the jury instruction on Soto's Count 9 rape (vaginal intercourse and administering an intoxicant). The court explained:

Now, with this count, as was charged earlier under this particular charge of rape, you're also going to consider the lesser included offense of sexual battery, which is a lesser included offense of this particular count.

When we were on break, I discussed  the instruction that you were read. The purpose of receiving a lesser included offense is correct as read to you.  But in my discussions with the attorneys, we agreed that the — what sexual battery as defined was confusing as it was contained in these instructions.

*So, we've clarified that for you right now.*

If you find that the state failed to prove beyond a reasonable doubt all the essential elements of rape as defined under R.C. 2907.302(A)(1), then your verdict must be guilty of that offense.

In that event or if you're unable to unanimously agree, you would continue your deliberations to decide whether the state has proven beyond a reasonable doubt all the essential elements of the lesser included offense of sexual battery.

Now, the offense of sexual battery is distinguished from rape as charged under that section by the absence or the state's failure to prove that the defendants substantially impaired the alleged victim's judgment or control

by administering a drug, intoxicant, or controlled substance, to her, surreptitiously or by force, threat of force, or deception.

So, if you were to find beyond a reasonable doubt that element was not proven by the state as alleged in that count of rape, then you're allowed to consider the lesser included form of sexual battery.

Sexual battery as defined in R.C. 2907.03 states that, no person shall engage in sexual conduct with another, not the spouse of the offender, when the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired.

Does that clarify it a little for you as to what sexual battery is?

All right, thank you.

We're going to make amendments to these instructions to comply with the modifications that we made.

So, the term knowingly has been previously defined. That same definition applies here.

If you find the state proved beyond a reasonable doubt all the elements of the lesser included offense of sexual battery, your verdict must be guilty. You will then indicate your findings on the verdict form.

If you find the state failed to prove beyond a reasonable doubt any one or more of the essential elements of the lesser included offense of sexual battery, your verdict must be not guilty.

And when you reach a finding, you would make your findings on the verdict form.

(Emphasis added.) (Tr. 1125-1129.)

**{¶54}** The trial court not only corrected the instruction, it repeated the explanation. To insure that the jury was not confused, as is more fully detailed in the analysis of Soto's third assigned error, the trial court polled the jury after the verdict, as to Count 13 finding Soto guilty of fellatio by causing intoxication (R.C. 2907.02(A)(1)(a)).

The trial court confirmed their understanding of the charge, the lesser included offense, and their verdict. We do not find that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). The second assignment of error is overruled.

### 3. Third Assignment of Error

{¶55} Soto next argues that, while the trial court provided proper instructions on the lesser included offense of sexual battery for the other rape by impairment counts, the trial court committed plain error by failing to recite the sexual battery instruction on Count 13. The record reflects that the trial court failed to give the instruction on Count 13; however, we cannot say that the trial court committed plain error. Soto cannot demonstrate that, but for the error, the outcome of the proceedings would have been different. *Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240; *Williford*, 49 Ohio St.3d 247, 251, 551 N.E.2d 1279.

{¶56} During closing arguments, the state explained that sexual battery is a lesser included offense of the rape by impairment charges, and specifically named Counts 9, 11, and 13 for Soto. (Tr. 1146-1147.) The state also distinguished between the impairment elements of rape and sexual battery. The state pointed out that, in the case of rape impairment, the offender has a role in causing the impairment. In contrast, sexual battery impairment requires that the offender have knowledge that the victim is impaired, and is unable to appraise the nature of the victim's conduct, regardless of causation.

**{¶57}** The verdict forms for Count 13 included both the principal and lesser included offenses. Due to the presence of a "scribble" on the verdict form, the court polled the jury to ensure there was no confusion:

> And on count thirteen, the charge of rape, there is a finding of guilty. This is the charge of rape. Juan Soto, did engage in sexual conduct, fellatio, with [M.R.]. Now there is a notation or some type of scribble on that verdict form. So I'm going to poll the jury, make sure that I'm reading this correctly.

(Tr. 1206.)

**{¶58}** Each juror confirmed that Soto was determined to be guilty of the principal offense of rape (fellatio) by impairment under R.C. 2907.02(A)(1). The trial court also stated for the record that the jury indicated "not guilty" on the verdict form for the lesser included offense of sexual battery for Count 13.

**{¶59}** Based on the foregoing, the third assignment of error is overruled.

### B. The Evidence

#### 1. Fourth, Fifth, and Sixth Assignments of Error

**{¶60}** Soto challenges the manifest weight of the evidence in the sixth assignment of error, the sufficiency of the evidence in the fourth assignment of error, and the denial of Soto's Crim.R. 29 motion for judgment of acquittal in the fifth assignment of error. Appellate review of the denial of a Crim.R. 29 motion is identical to reviewing whether the evidence was legally sufficient to sustain the defendant's convictions. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. Thus, we combine our analysis for purposes of judicial economy.

**{¶61}** "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. An appellate court, "may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387.

**{¶62}** The question of "whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148, 1955 Ohio LEXIS 604 (Feb. 2, 1955)." *Thompkins* at 386. It is, "an inquiry about due process, * * * the resolution of which does not allow the court to weigh the evidence." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶63}** "[A] determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Moore*, 8th Dist. Cuyahoga No. 98178, 2012-Ohio-5891, ¶ 12, quoting *Cleveland v. Roche*, 8th Dist. Cuyahoga No. 96801, 2012-Ohio-806, ¶ 8. Thus, we consider whether our finding on the manifest weight of the evidence error is dispositive here.

**{¶64}** A manifest weight inquiry looks at whether the evidence was substantial enough for a jury to reasonably conclude that all of the elements of the alleged crime have

been proved beyond a reasonable doubt. We sit "as a thirteenth juror." *Thompkins* at 387, quoting *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

**{¶65}** We review the entire record, consider the credibility of the witnesses, weigh the evidence and all reasonable inferences, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Martin* at 175. "Weight is not a question of mathematics, but depends on its effect in inducing belief." *Black's Law Dictionary* 1594 (6th Ed.1990). *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

**{¶66}** Soto was convicted of violating R.C. 2907.02(A)(1)(a), as set forth in the indictment:

> On or about July 13, 2014 to July 14, 2014 [Appellant] did engage in sexual conduct, to wit: fellatio with Jane Doe I who was not the spouse of the offender, by substantially impairing her judgment or control by administering a drug, intoxicant, or controlled substance to her surreptitiously or by force, threat of force, or deception.

R.C. 2907.02(A)(1)(a) provides that no person shall engage in sexual conduct with another not his spouse where:

> For the purpose of preventing resistance, the offender substantially impairs
> the other person's judgment or control by administering any drug,
> intoxicant, or controlled substance to the other person surreptitiously or by
> force, threat of force, or deception.

**{¶67}** Soto argues that the state failed to demonstrate that Soto engaged in

fellatio with M.R. by substantially impairing her judgment or control, and that the only DNA evidence was from Machuca. Further, Soto contends that there is no evidence that M.R. was forced to consume the alcohol and cocaine, or that she did not know what she was consuming.

{¶68} M.R. testified that, after she consumed the drink that Soto handed to her at the first house, she began to feel weak and did not feel "like herself." Soto then inhaled cocaine, placed it in front of M.R., put his hand on her head and told her to inhale it. Soto placed cocaine on his finger and inserted it into M.R.'s nostril. The toxicology report supports the ingestion of alcohol and cocaine. Though overt threats were not made to induce her to drink the beverage or inhale the cocaine, M.R. testified that she felt that she did not have a choice.

{¶69} Soto drove M.R. to the second house. M.R. was still feeling weak, and was not sure if she lost consciousness totally, or was "in and out" of consciousness. While unsure of the order of occurrence, M.R. specifically remembered Machuca hitting her in the face, and Soto "putting his penis in my mouth. And I remember them changing places." M.R.'s description of the sexual activities of Soto and Machuca remained consistent in spite of memory inconsistencies regarding other events of that night.

{¶70} The evidence also demonstrates that M.R. was too intoxicated to give valid consent. Turk testified that she waited for three hours until M.R. was coherent to obtain consent. Schueler testified that M.R. tested positive for alcohol and cocaine and estimated that, at the time M.R. was delivered to the home of N.A., M.R.'s alcohol level

was 0.102 grams per deciliter. Oblock testified that it was possible for a person to engage in sexual activity and leave no evidence of DNA, and that the cold shower that M.R. was placed in to keep her awake until the ambulance arrived may possibly have removed DNA.

{¶71} In light of our review of the record, we find that the trial court did not lose its way or create a manifest miscarriage of justice. *Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. As a result, Soto's conviction is not against the manifest weight of the evidence. This conclusion is also dispositive of Soto's sufficiency claims. *Moore,* 8th Dist. Cuyahoga No. 98178, 2012-Ohio-5891, ¶ 12. The fourth, fifth, and sixth assignments of error are overruled.

{¶72} The trial court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE
MARY EILEEN KILBANE, P.J., and
MARY J. BOYLE, J., CONCUR