[Cite as *State v. Newlin*, 2019-Ohio-865.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106922**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**ANTHONY NEWLIN**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-610432-A

**BEFORE:** Laster Mays, J., E.T. Gallagher, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 14, 2019

-i-

**ATTORNEY FOR APPELLANT**

Stephen L. Miles
20800 Center Ridge Road, Suite 405
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Jeffrey Schnatter
          Patrick J. Lavelle
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Anthony Newlin ("Newlin") appeals his jury trial convictions and consecutive sentences arising from drug trafficking charges that resulted in the death of a purchaser.    After a review of the record, we affirm.

**I.        Background and Facts**

{¶2} On November 1, 2016, Newlin was indicted by the grand jury on 22 criminal counts including involuntary manslaughter, corrupting another with drugs, drug trafficking, drug possession, and possession of criminal tools.    The first five counts were based on the death of Richard Relyea ("Relyea") on or about February 24, 2015, allegedly caused by the consumption of heroin purchased from Newlin.    Counts 6 through 11 arose from the sale of heroin mixed with fentanyl to a confidential reliable informant ("CRI") on June 21, 2016; Counts 12 through

17 stemmed from a second transaction with the CRI on June 24, 2016; and Counts 18 through 21 derive from the search warrant executed at Newlin's home on June 24, 2016.

{¶3} Newlin rejected a plea agreement. A jury trial commenced on February 12, 2018, and Newlin was found guilty of all counts. Newlin was sentenced to a cumulative sentence of 19 years on March 1, 2018.

## II. Trial

{¶4} Radisson Hotel Engineer Francis Gardner ("Gardner") was summoned to Room 715 by a housekeeper around noon on February 25, 2015. The housekeeper was unable to enter the room because the interior latch was still engaged. Gardner and the housekeeper entered to find Relyea's body on the floor and called 911. EMS personnel arrived along with detectives.

{¶5} Relyea checked in the prior evening. Gardner was familiar with the system that records all keycard access activity and provided the records to Detective Klamert ("Det. Klamert").

{¶6} Det. Klamert and Detective Moran ("Det. Moran") from the Cleveland Police Department's Narcotics Unit focused on heroin death investigations ("HIDI"), responded to the scene. Det. Klamert discussed the rise in abuse of synthetically made fentanyl that is more potent than heroin but much less expensive. He explained that drug traffickers mix the heroin, fentanyl, and another cutting agent. HIDI focuses on key pieces of evidence such as tourniquets, spoons, lighters, q-tips, cigarette butts, and most important to identifying the drug trafficker, packaging containing DNA evidence along with cell phone calls and texts.

{¶7} The detectives arrived to find the deceased Relyea fully clothed and laying on the floor. It did not appear that the bed had been slept in. Drug paraphernalia, two blue waxy envelope pieces believed to have contained heroin, a line of white powder, and related drug

paraphernalia were on a table by the decedent's body as well as a cell phone, bottle of water, a wallet, and cigarette packs. A rolled up dollar-bill, typically used as a straw to inhale the drugs was laying by the body.

{¶8} The room was accessed by keycard promptly after registration at 6:57 p.m. and there was no indication of access after that point. The last text message in Relyea's phone contained a text from "MCEMCE" inquiring "Did you hit yesterday??" (Tr. 302.) Det. Klamert interpreted "hit" to mean to inject or use heroin. (Tr. 302.) Detectives also downloaded the decedent's cell phone data to create a computerized data extraction report listing communications activities in chronological order.

{¶9} The text message was traced to the number 216-858-9xxx. The number was traced to a cellular account in the name of "Tony Nulin"[1] with a post office address in California. Det. Klamert's call to the number was answered by a male who hung up after Det. Klamert explained the reason for the call. Det. Klamert subpoenaed the cell phone records for "Tony Nulin," which confirmed that six calls took place with Relyea the day prior to the death discovery.

{¶10} Det. Klamert researched the name "Tony Nulin" but was unable to locate anyone with that name. In April 2015, the detective was able to develop a suspect profile based on DNA extracted from the drug packaging evidence at the scene.[2] The investigation stalled until June 2016 when Det. Klamert located information for Newlin, the appellant in this case, in the state of Ohio's computerized driver's license identification database.

---

[1] After investigation, "Tony Nulin" was ultimately discovered to be the appellant Newlin in this action.

[2] The profile was developed based on the Combined DNA Index System contained in the national criminal DNA database records, information that was not shared with the jury to prevent prior acts evidence.

{¶11} Det. Klamert had a CRI attempt to contact Newlin using the 216-858-9xxx cell phone number that was associated with "Tony Nulin" to set up a controlled drug buy on June 21, 2016. The call was monitored by police. The call recipient set up a meeting with the CRI at the Sunoco gas station at East 130th Street and Buckeye Road in Cleveland for an $80 heroin transaction. The CRI was searched prior to the meeting and a surveillance team was dispatched to the area where the transaction was observed. The heroin was packaged in a waxy blue envelope, the same type of envelope found at the Relyea scene.

{¶12} On June 24, 2016, a second controlled purchase by the CRI was arranged with the same individual for the same location and amount. Surveillance was also conducted at Newlin's apartment. Newlin was arrested when returning to his apartment after the transaction.

{¶13} Det. Klamert obtained a warrant to search the apartment. Police entered using Newlin's keys and discovered various papers with Newlin's name and address, over 100 blue waxy envelopes containing suspected heroin, and a box containing approximately 1,000 of the empty blue envelopes. The DNA swab taken from Newlin later that day confirmed the profile information previously obtained.

{¶14} Det. Klamert also revealed that Relyea was on probation, lived in Aurora, Ohio, and had contacted the Social Security Administration ("SSA"), his attorney, and his family the day before his death. A May 12, 2014 text by Relyea almost a year before his death said "I just can't go on. No family. No future. God forgive me. I want to be with dad and Brian and Laurie." (Tr. 434.)

**{¶15}** Neither the controlled buys nor the search warrant execution was recorded, photographed, or videotaped. The serial numbers of the money used for the buys were not recorded. Newlin's call records confirmed the calls by the CRI from Det. Klamert's phone.

**{¶16}** Cuyahoga County Regional Forensic Scientist and Drug Analyst Shaena Taylor tested the evidence in this case and testified that the items at the hotel scene that tested positive for heroin residue included: the waxy blue envelope pieces, rolled dollar bill, and a small black plastic container. The tan-colored powder in the 134 waxy blue envelopes secured from Newlin's apartment tested positive for a mixture of heroin and fentanyl and the scale from his apartment was positive for heroin residue.

**{¶17}** Cuyahoga County Chief Deputy Medical Examiner Joseph Felo ("Dr. Felo") supervised Relyea's autopsy. The blood toxicology results indicated that Relyea's morphine count was extremely high indicating a quick or immediate death.

**{¶18}** The urine toxicology results revealed the presence of [d]iazepam (commonly known as valium), [c]lonazepam (commonly used for seizure disorders), [t]emazepam (possibly formed due to break-down of the [d]iazepam), [t]ramadol, nicotine, oxycodone as well as six-acetylmorphine and codeine that is derived from heroin.

**{¶19}** Dr. Felo opined that Relyea ingested heroin anywhere from two days to 30 minutes prior to ingesting the lethal dose allegedly supplied by Newlin. The cause of death was "acute intoxication by the combined effects of heroin, [c]lonazepam, and [t]emazepam." (Tr. 556.) The death was classified as accidental. Dr. Felo admitted that the toxicology testing did not cover all prescription drugs, that the mix of drugs in Relyea's system was dangerous, and that the combination of drugs affects the central nervous system and could cause suicidal thoughts.

**{¶20}** Dr. Felo did not review Relyea's medical records but observed that Relyea was

wearing a hospital medical bracelet. He had not been informed that: (1) Relyea lived in Aurora, Ohio but brought no luggage with him to the hotel; (2) no cash or credits cards were found on Relyea's body; (3) Relyea apparently had not left the room since he checked into the hotel around 7:00 p.m.; (4) the bed had not been disturbed; (5) Relyea called the SSA and his attorney the prior day; and (6) Relyea had no apparent means of transportation. (Tr. 565.) These factors did not change Dr. Felo's cause-of-death opinion. The high amount of morphine metabolite indicated consumption of heroin and a prompt loss of consciousness. (Tr. 555, 591-592.) Dr. Felo maintained that heroin was the cause of death whether by suicide or accident.

{¶21} Cuyahoga County Regional Forensic Science DNA Analyst Jeffrey Oblock testified that the DNA swab from a segment of the waxy blue envelope from the hotel room contained a mixture of two or more individuals. Relyea's DNA could not be excluded as a possible contributor and was not tested for statistical probability because of the presumption under the circumstances that he touched the envelope. Newlin's DNA was present to a high degree of statistical probability.

{¶22} Cleveland Narcotics Detective Cline, certified in cell phone forensics extraction, performed the extractions on the Relyea and Newlin phones. The extraction confirmed communications between the cell phones the day before the body was discovered. The cell phone mapping also showed that Relyea traveled from Aurora to the area of Newlin's apartment at approximately 3:15 to 3:30 p.m. Newlin's cell phone map also indicated physical proximity at that time. Relyea then continued to downtown Cleveland.

{¶23} Cleveland Narcotics Detective Ward ("Det. Ward") participated in the June 21, 2016 controlled buy. He did not personally observe the exchange of drugs between the CRI and Newlin but saw the CRI enter the gas station for the meeting. For the second buy on June 24,

2016, Det. Ward saw Newlin exit his apartment building and walk toward the gas station to meet the CRI. He also participated in Newlin's arrest after the buy. Det. Ward maintained that police did not enter the apartment until the search warrant was obtained.

**{¶24}** At the conclusion of the evidence, the jury found Newlin guilty on all counts. Newlin appeals the convictions.

## III. Assignments of Error

**{¶25}** Newlin assigns the following errors for our review:

I. The appellant received ineffective assistance of counsel.

II. The evidence was insufficient to support the convictions for involuntary manslaughter and corrupting another with drugs.

III. The appellant's convictions were against the manifest weight of the evidence.

IV. The trial court erred by sentencing the appellant to consecutive sentences.

## IV. Discussion

### A. Ineffective Assistance of Counsel

**{¶26}** To substantiate a claim of ineffective assistance of counsel, Newlin must show that counsel's performance was so deficient that he was prejudiced and denied a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant must also show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *State v. Dues*, 2014-Ohio-5276, 24 N.E.3d 751, ¶ 57 (8th Dist.), citing *Strickland*.

**{¶27}** Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland* at 689. In Ohio, there is a presumption that a properly licensed attorney is

competent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). The defendant must overcome the presumption that, under the circumstances, the challenged action "'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). We consider whether the actions by counsel were "outside the wide range" of behaviors demonstrating "professionally competent assistance." *Strickland* at 690.

{¶28} Newlin argued that evidence gleaned from the search should be suppressed because police entered, searched the apartment, and towed Newlin's vehicles prior to issuance of the warrant. The motion was filed March 31, 2017, the state responded on May 26, 2017, and the suppression hearing was continued several times. Newlin argues that there was no activity by counsel on the motion after that point and no ruling issued.

{¶29} The record reflects that the motion to suppress was discussed at the July 11, 2017 hearing. The trial court said

> [S]o from the court's understanding of the issues that have been presented, [defense counsel] is alleging two sort of separate and distinct issues: That the probable cause on a warrant is not sufficient, and that the time frame for which the warrant was issued is false and/or when the officers entered is false.
>
> So, essentially, there's an accusation of untruthfulness on the part of the officers when they entered Mr. Newlin's apartment, based on the time frame and the warrant, and there's allegedly a time noted on the affidavit. I have not seen the affidavit yet, it did not come through as an attachment on the court's docket. I suspect it will be marked and identified as an exhibit.
>
> So really there is essentially a *Franks* issue in the idea that [defense counsel] is, in fact, accusing the officers of going in before the time frame and suggesting that the time frame that they entered is, in fact, a lie.

(Tr. 6-7.)

{¶30} The trial court distilled the timing argument into a simple issue of credibility as

opposed to a warrantless search, a matter wholly within the province of the trial court in a suppression hearing. The state agreed to submit the towing records to rebut Newlin's timing argument. The affidavit and search warrant were entered into evidence for the trial court's consideration and the hearing was to resume in several days.

{¶31} After a series of continuances and on the day of trial, defense counsel revisited the motion to suppress.

Counsel: If I did not formally withdraw [the motion] on that previous day, I did want to formally withdraw it now. And again, our decision in that regard was based on numerous conversations between Mr. Newlin and myself.

Court: I do remember that we were set and that the [s]tate at the time gave you a lot of access to a lot of information about — I want to say it was tow sheets and when officers were present when tow sheets were available, so you were able to create a time line which made you feel, frankly, more comfortable with the way that their own reports read.

Counsel: Yeah. I want to keep the record as clean along the way as I possibly can. And to the extent I don't know whether I formally withdrew it, I want the court to know that is the case.

Court: The motion is withdrawn and accepted. Thank you very much.

(Tr. 39.)

{¶32} The record supports defense counsel's due consideration of the suppression issue and reasonable grounds for the motion withdrawal. Newlin has failed to identify how counsel's conduct was "outside the wide range" of behaviors demonstrating "professionally competent assistance" and how he was prejudiced by that conduct. *Strickland*, 466 U.S. 668, 689-690, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Counsel is not required to file futile motions" where success is improbable. *State v. Hudson*, 8th Dist. Cuyahoga No. 102767, 2015-Ohio-5424, ¶ 9, citing *State v. Martin*, 20 Ohio App.3d 172, 174, 485 N.E.2d 717 (1st Dist.1983), and *State v. Parra*,

8th Dist. Cuyahoga No. 95619, 2011-Ohio-3977, ¶ 78.

**{¶33}** The assigned error is overruled.

**B.** **Sufficiency and Manifest Weight of the Evidence**

**{¶34}** The second and third assigned errors challenge the sufficiency and weight of the evidence. Newlin argues that his convictions for involuntary manslaughter (R.C. 2903.04(A)), corrupting another with drugs (R.C. 2925.02(A)(3)), and drug trafficking (R.C. 2925.03(A)(1)-(2)) are against the manifest weight of the evidence and that the evidence is not sufficient to support the convictions. We find that the arguments are misplaced.

**{¶35}** "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. While an appellate court "may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387.

**{¶36}** The question of "whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955)." *Thompkins* at 386. It is, "an inquiry about due process, * * * the resolution of which does not allow the court to weigh the evidence." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶37}** "'[A] determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.'" *State v. Moore*, 8th Dist. Cuyahoga No.

98178, 2012-Ohio-5891, ¶ 12, quoting *Cleveland v. Roche*, 8th Dist. Cuyahoga No. 96801, 2012-Ohio-806, ¶ 8. Thus, we consider whether our finding on the manifest weight of the evidence error is dispositive here.

**{¶38}** A manifest weight inquiry looks at whether the evidence was substantial enough for a jury to reasonably conclude that all of the elements of the alleged crime have been proved beyond a reasonable doubt. We sit "'as a thirteenth juror.'" *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

**{¶39}** We review the entire record, consider the credibility of the witnesses, weigh the evidence and all reasonable inferences, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Martin* at 175. "Weight is not a question of mathematics, but depends on its effect in inducing belief. *Black's Law Dictionary* 1594 (6th Ed.1990)." *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

**{¶40}** The trial court instructed the jury on involuntary manslaughter and the predicate offenses in this case:

> Before you can find the defendant guilty of involuntary manslaughter, you must find beyond a reasonable doubt that on or about the [2]4th day of February of 2015, in Cuyahoga County, Ohio, the defendant did cause the death of Richard Relyea and such death was the proximate result of Anthony Newlin committing or attempting to commit the felony offense of drug trafficking and/or corrupting another with drugs.

(Tr. 875.) *See State v. Edmonds*, 8th Dist. Cuyahoga No. 104528, 2017-Ohio-745, ¶ 34.

**{¶41}** R.C. 2903.04(A) provides that "[n]o person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony." *Id*. As the state explains,

To sustain a conviction for involuntary manslaughter the State must prove that the defendant caused the victim's death as a result of committing a felony. *State v. Edmonds*, 8th Dist. Cuyahoga No. 104528, 2017-Ohio-745, ¶ 34. The predicate offenses Mr. Newlin is charged with are corrupting another with drugs and/or drug trafficking. To sustain a conviction for the corrupting another with drugs as the predicate offense the State was required to prove that Mr. Newlin knowingly, by any means, administered or furnished Mr. Relyea with a controlled substance and thereby caused serious physical harm to Mr. Relyea. *Id.*

Appellee's Brief, p. 17-18.

**{¶42}** Corrupting another with drugs is set forth under R.C. 2925.02(A)(3).

(A) No person shall knowingly do any of the following: * * *

(3) By any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent * * *.

*Id.*

**{¶43}** The drug trafficking counts relating to Relyea were under R.C. 2925.03(A)(1) and

(2):

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

*Id.*

**{¶44}** Newlin points to factors indicating alternative causes of death such as the autopsy conclusion that death was accidental. At the point that Relyea consumed the final dose of heroin at the hotel resulting in immediate death, he had a number of drugs in his system including heroin that was consumed at least thirty minutes prior to his death. According to police, Relyea

did not have money, car keys, or a driver's license and allegedly took a cab or other transportation to the hotel. Coupled with the record of Relyea's phone calls and texts to family, the SSA office, and an attorney, Newlin infers that death was self-inflicted.

{¶45} Newlin also argues that the state failed to prove the underlying felony element of the charge that Newlin sold the heroin to Relyea. Specifically, that on February 24, 2015, Relyea traveled from Aurora to Cleveland, met Newlin at some point along the way to engage in a drug transaction for the heroin that was consumed by Relyea at the hotel leading to his death.

{¶46} The cell phone records reveal that Relyea called Newlin at 10:50 a.m., 1:32 p.m., 2:39 p.m., and 2:51 p.m. Newlin called Relyea at 3:11 p.m. and 3:14 p.m. Cell tower mapping shows that Relyea was in Aurora at 10:54 a.m. and Newlin was in the area of his apartment building at 10:50 a.m. At 1:32 p.m., Newlin's movement was southeasterly in the area of Routes 43 and I-480. At 1:50 p.m., tower activity tracks Relyea moving northwesterly near the intersection of Routes 43 and 91 in the Beachwood area. At 2:39 p.m., Relyea's cell phone registered in the Shaker Heights area and Newlin's phone was in the

area of his apartment building near the Cleveland and Shaker Heights border. Newlin called Relyea at 3:11 p.m. and 3:14 p.m. and both cell phones are mapped in the area of Newlin's apartment at those times. The next and last call listed is at midnight from Relyea to his automated banking account from the area of the hotel.

{¶47} The text message records reflect a text from Newlin to Relyea on February 25, 2015 at 3:17 p.m. asking, "[d]id you hit yesterday?" (Tr. 309.) The waxy blue envelope found in Relyea's hotel room that also contained Newlin's DNA was the same type used by Newlin during the controlled buys and discovered in Newlin's apartment. The successful controlled buys confirmed that Newlin trafficked heroin.

**{¶48}** "Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." (Citations omitted.) *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991).

**{¶49}** The "weight of the evidence and credibility of the witnesses are matters primarily for the trier of fact." *State v. Stewart*, 8th Dist. Cuyahoga No. 86411, 2006-Ohio-813, ¶ 12, citing *State v. Bruno*, 8th Dist. Cuyahoga No. 84883, 2005-Ohio-1862. An appellate court "will not reverse a verdict where the trier of fact could reasonably conclude" "that the prosecution proved the offense beyond a reasonable doubt." *Id.,* citing *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978).

**{¶50}** Based on our independent review of the record, we find that the jury did not lose its way or create a manifest miscarriage of justice. *Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541. As a result, Newlin's conviction is not against the manifest weight of the evidence. This conclusion is also dispositive of Newlin's sufficiency claims. *Moore*, 8th Dist. Cuyahoga No. 98178, 2012-Ohio-5891, ¶ 12. The second and third assignments of error are overruled.

**C. Consecutive Sentences**

**{¶51}** The fourth and final assigned error is based on the trial court's failure to make the necessary findings pursuant to R.C. 2929.14(C)(4) to impose consecutive sentences for Count 1, involuntary manslaughter, and Count 18, drug trafficking of heroin in an amount between 100 and 500 unit doses. Newlin was sentenced to 11 years for Count 1 and eight years on Count 18. All other sentences were concurrent.

**{¶52}** A trial court is required to "make three statutory findings" "in order to impose consecutive prison terms for convictions of multiple offenses." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 252, citing R.C. 2929.14(C) and *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37.

**{¶53}** First, a trial court must find that consecutive sentences are "necessary to protect the public or to punish the offender. R.C. 2929.14(C)(4)." *Id*. at ¶ 252. Second, a trial court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public. *Id*." *Id*. The third requirement is that the

trial court make one of the findings set forth in R.C. 2929.14(C)(4)(a). *Id*. The findings must be set forth on the record at the sentencing hearing as well as in the sentencing entry. *Id*. at ¶ 253, citing *Bonnell* at ¶ 37.

**{¶54}** At sentencing, the trial court said,

[T]he [c]ourt having considered all the required factors under [R.C.] 2929.11, 12, and 13, finds that prison is the appropriate sentence.

At this time I sentence the defendant to 19 years in the Lorain Correctional Institution. I sentence the defendant to 11 years on Count 1; 8 years on Count 18. And those two counts will run consecutive to each other.

\*     \*     \*

So Counts 1 and Count 18 will run consecutively to each other. All of the other counts will run concurrently for a total of 19 years in the Lorain correctional institution.

At this time I impose the prison term consecutively, finding that consecutive service is necessary to both protect the public from future crimes and to punish this defendant.

The consecutive sentences are not disproportionate to the seriousness of this defendant's conduct — and certainly there is someone who is dead here — and

the danger that this defendant imposes to the public and that at least two of the multiple offenses were committed in the case as part of one or more courses of conduct; and that the harm caused by the said multiple offenses was so great or unusual, that no single prison term for any of the offenses committed and any of the courses of conduct adequately reflect the seriousness of this defendant's conduct.

(Tr. 955-958.)

{¶55} The sentencing journal entry provides,

The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger defendant poses to the public; and that, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct.

Journal entry No. 102756351 (Mar. 1, 2018).

{¶56} The trial court addressed each of the requisite elements at the sentencing hearing and accurately journalized the findings. We find that the trial court did not err. The fourth assigned error is without merit.

## V. Conclusion

{¶57} Appellant's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR